IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| QUENTIN GETTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1134-MAB |
| | ) |
| VENERIO SANTOS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Currently pending in this matter is Defendant Dr. Venerio Santos's second motion for summary judgment on the issue of exhaustion (Doc. 43), as well as, the Report and Recommendation issued by the undersigned on September 27, 2019 (Doc. 48). Also pending is Plaintiff Quentin Getty's motion for leave to amend his complaint, which was filed on December 30, 2019 (Doc. 59).

A summary of the procedural history of this case will be helpful before discussing the pending motions. Plaintiff filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 on May 18, 2018, alleging various individuals were deliberately indifferent to his shoulder issues (Doc. 1). Following a threshold review of his complaint under 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment claim against Defendants Dr. Venerio Santos for acting with deliberate indifference to Plaintiff's shoulder issues when Plaintiff arrived at Centralia in November 2017 (Doc. 7). Specifically, Plaintiff

claimed that he met with Dr. Santos and informed the doctor of his history of shoulder dislocations and said that his pain medication was not working, but Dr. Santos said there was no need for further treatment (Doc. 1; Doc. 7). Dr. Santos moved for summary judgment on the issue of exhaustion of administrative remedies (Doc. 19). Before Plaintiff responded to the motion for summary judgment, he filed a motion for leave to amend his complaint (Doc. 23). He wanted to add new allegations against Dr. Santos regarding additional instances between February and September 2018 when Dr. Santos allegedly refused or failed to provide him with adequate medical treatment for his pain and shoulder issues (Doc. 23; *see also* Doc. 39; Doc. 40). The briefing on Dr. Santos's motion for summary judgment and Plaintiff's motion for leave to amend continued contemporaneously (Docs. 25, 28, 29, 30).

Following an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned issued a Report and Recommendation on June 10, 2019, recommending that Dr. Santos's motion for summary judgment be granted (Doc. 38). Specifically, the undersigned concluded that Plaintiff was not credible in his assertions that he submitted grievances that were never responded to (Doc. 38). Ten days later, the undersigned entered an Order granting in part Plaintiff's motion for leave to amend (Doc. 39). Plaintiff's proposed amended complaint was viewed as alleging additional, discrete instances of deliberate indifference against Dr. Santos (*see* Doc. 39). Plaintiff also may have been alleging a continuous violation, but that was not clear. For the sake of clarity amidst the unresolved issue of exhaustion as to Count 1, the new allegations were designated as Count 2 (Doc. 39). On July 2, 2019, Dr. Santos filed a second motion for

summary judgment on the issue of exhaustion as to Count 2 (Doc. 43). Plaintiff filed his response in opposition on August 7, 2019 (Doc. 46).

On September 6, 2019, District Judge Staci Yandle entered an order adopting the Report and Recommendation and granting Dr. Santos's first motion for summary judgment and dismissing Count 1 for failure to exhaust (Doc. 47). The undersigned then issued a second Report and Recommendation on September 27, 2019, recommending that Dr. Santos's second motion for summary judgment on the issue of exhaustion as to Count 2 be granted because Plaintiff did not submit any argument or evidence showing that he fully exhausted relevant grievances (Doc. 38). A week later, Plaintiff sought leave to amend his complaint again (Doc. 49), but his request was denied because he did not comply with Local Rule 15.1 (Doc. 50). Plaintiff then filed an objection to the second Report and Recommendation, to which Dr. Santos filed a response (Docs. 51, 55). Before Judge Yandle entered an order regarding the second Report and Recommendation, the final consent from Defendants was filed and on December 5, 2019, Judge Yandle referred the case to the undersigned pursuant to 28 U.S.C. § 636(c) for all further proceedings (Doc. 58). Plaintiff then filed another motion for leave to amend his complaint on December 30, 2019 (Doc. 59), which Dr. Santos opposed (Doc. 60).

**A. Plaintiff's Motion for Leave to Amend the Complaint (Doc. 59)**

Plaintiff seeks leave to amend his complaint to revive Count 1, which was previously dismissed without prejudice for failure to exhaust (Doc. 59). For his proposed second amended complaint, he simply resubmitted his original complaint (*see* Doc. 1).

The Court notes as an initial matter that it appears Plaintiff is attempting to amend his complaint in a piecemeal fashion because his proposed second amended complaint does not contain any of the allegations that form the basis of Count 2. But Plaintiff presumably does not want to abandon his claim in Count 2. The Court does not accept piecemeal amendments or supplements to the complaint. *See* SDIL-LR 15.1. Once a plaintiff files an amended complaint, it "supersedes all previous complaints and controls the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (citing *Carver v. Condie,* 169 F.3d 469, 472 (7th Cir.1999)). In other words, "a plaintiff's new complaint wipes away prior pleadings." *Id. Accord Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading and becomes functus officio." (quoting *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir.1955)). Consequently, a proposed amended complaint must contain *all* facts and *all* claims against *all* Defendants.

Even if Plaintiff was not attempting to make a piecemeal amendment, his proposed second amended complaint would not be accepted. He is trying to replead Count 1, which was previously dismissed because it was not exhausted at the time he filed this lawsuit. He claims that he has since exhausted it. But a prisoner cannot save an improperly exhausted claim in this manner. The PLRA "makes exhaustion a 'precondition to suit' and requires dismissal if the prisoner failed to satisfy that

condition." *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005) (quoting *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)). "A district court has no 'discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.'" *Barnes*, 420 F.3d at 677 (quoting *Perez*, 182 F.3d at 535. *See Bradley v. Dennison*, No. 17-CV-0829-SMY, 2017 WL 5756911, at *3 (S.D. Ill. Nov. 28, 2017); *Castro v. USA*, No. 13-CV-00571-JPG-PMF, 2015 WL 4573304, at *2 (S.D. Ill. July 29, 2015). *Contra Barnes*, 420 F.3d at 677 (finding prisoner properly exhausted where "[i]t [was] evident . . . that [he] did not attempt to replead improperly exhausted claims in his amended complaint" but rather § 1983 claims were new claims against new defendants that arose after the original complaint was filed and were exhausted before he amended his complaint to add them). If Plaintiff wants to bring this claim, he must file a new suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

Accordingly, Plaintiff's motion for leave to amend the complaint (Doc. 59) is denied.

## B. The Second Report and Recommendation re: the Second Motion for Summary Judgment

As the presiding judge in this matter, the undersigned must consider Plaintiff's objections to the second Report and Recommendation dated September 27, 2019, as well as, Dr. Santos's response, and determine whether to adopt the Report and Recommendation (Doc. 48) as the final order on Dr. Santos's motion for summary judgment (Doc. 43).

To recap, there were five grievances to consider in determining whether Plaintiff exhausted as to Count 2 (Doc. 48). The first three grievances were discussed in the first Report and Recommendation on Dr. Santos's first motion for summary judgment (Doc. 38). There was the grievance dated December 26, 2017, which Plaintiff previously conceded was not directed at Dr. Santos (Doc. 48, p. 6; Doc. 38, p. 3). And there were the March 2018 and April 2018 grievances, which Plaintiff claimed he submitted but never received responses to; however, the Court determined he was not credible (Doc. 48, p. 6; Doc. 38, pp. 2–3, 12). Consequently, none of these three grievances could serve to exhaust the claims in Count 2.

The fourth and fifth grievances were dated August 20, 2018 and August 26, 2018 (Doc. 48, p. 7).[1] These were "new" grievances and had not previously been considered by the Court. Dr. Santos argued that these grievances could not be used to exhaust Count 2 because they were filed months after Plaintiff initiated his lawsuit (Doc. 44, p. 6). The undersigned disagreed but concluded that Dr. Santos was nevertheless entitled to summary judgment because there was no indication that Plaintiff had fully exhausted these grievances. More specifically, Plaintiff did not submit any argument or evidence showing that he complied with the requirements of the Illinois Administrative Code to fully exhaust either of these grievances (Doc. 48, pp. 7–11; *see* Doc. 46). In fact, Plaintiff did not even mention the August 2018 grievances in his response to the motion for summary judgment (Doc. 48, pp. 7–11; *see* Doc. 46). Additionally, in looking at the copies

---

[1] Dr. Santos and the Court previously indicated the fifth grievance was dated August 28, 2018 (Doc. 44; Doc. 48, p. 7). The grievance is actually dated August 26, 2018 (*see* Doc. 40, pp. 15–16; Doc. 44-1, p. 34).

of the grievances that Plaintiff attached to his amended complaint, there was nothing on the face of either grievance that suggested Plaintiff fully exhausted them (Doc. 48, pp. 7–11; *see also* Doc. 40). Consequently, the Court concluded that there was no factual dispute as to whether Plaintiff fully exhausted the August 2018 grievances, and Plaintiff waived any argument that he had in fact exhausted these grievances by failing to bring it up in his response to the motion for summary judgment (Doc. 48, pp. 7–11).

Plaintiff objected, arguing for the *first time* that he fully exhausted the grievances dated August 20 and 26, 2018 (Doc. 51). Dr. Santos responded that Plaintiff had waived this argument (Doc. 55). In the alternative, Dr. Santos repeated his argument that Plaintiff's claim in his amended complaint has always been the same: Dr. Santos was deliberately indifferent to Plaintiff's alleged reoccurring shoulder dislocations (Doc. 55). Therefore, Plaintiff had to exhaust his administrative remedies against Dr. Santos before tendering his Complaint to this Court, but he did not (Doc. 55).

In considering Plaintiff's objection and Dr. Santos's response, the Court reviewed the relevant materials and realized that it had previously overlooked the *updated* grievance records that Dr. Santos submitted with his second motion for summary judgment (Doc. 44-1). Those records plainly show that the August 20th grievance was fully exhausted and suggest that the August 26th grievance was as well (*see* Doc. 44-1, pp. 36–39).

The August 20th grievance was submitted as an emergency (Doc. 44-1, pp. 36–39). In this grievance, Plaintiff indicated that he dislocated his shoulder on August 13, 2018 and was sent to an outside hospital for treatment (*Id.*). When he returned to Centralia, he

stayed the night in the health care unit (*Id.*). Dr. Santos saw him the next day and discharged him. Plaintiff complained that Dr. Santos did not ask about his pain level or his wellbeing, did not schedule a follow-up appointment, and did not follow the emergency room physician's recommendations regarding pain medicine and a referral to an orthopedist (*Id.*). Plaintiff complained that his shoulder problem was a "chronic condition" but yet he is still charged a $5.00 copay every month to have his medication renewed (*Id.*). He also complained that he was in severe pain but Dr. Santos refused to increase his pain medication and refused to refer Plaintiff to an outside specialist for the herniated and bulging disc in his neck (*Id.*).

Before any action was taken on the August 20th grievance, Plaintiff submitted a second emergency grievance dated August 26th (Doc. 44-1, pp. 33–35). In this grievance, Plaintiff indicated that he was called to the health care unit on August 21st for a follow-up appointment with Dr. Santos (*Id.*). He complained that Dr. Santos refused to discuss his pain medication (*Id.*). He complained again about the monthly co-pay he is charged to renew his pain medication and that Dr. Santos will not increase the dosage of his prescription back to the level it was at before Plaintiff "tried taking [himself] off and living a pain medication free life" (*Id.*). The grievance officer wrote in response, "Getty, I have the first grievance and I am processing it. The warden determined it was an emergency" (*Id.*).

On August 27th, the warden received the August 20th grievance and ordered it to be processed on an expedited basis (Doc. 44-1, 38). The grievance officer reviewed it on August 30th (*Id.* at p. 37). In responding, the grievance officer addressed the complaints

contained in both of Plaintiff's grievances regarding his interaction with Dr. Santos on August 14th, his subsequent appointment on August 21st, and his pain medication (*Id.*). The grievance officer recommended denying the grievance and the warden concurred on August 30th (*Id.*).

Plaintiff appealed to the ARB on September 20th and submitted both grievances (*see* Doc. 44-1, pp. 34–39). The ARB received the grievances six days later (*Id.*). The ARB denied Plaintiff's appeal of the August 20th grievance on the merits, finding that the issue was appropriately addressed by the facility administration (*Id.* at p. 36). The ARB rejected the August 26th grievance without addressing it because Plaintiff did not include responses from the grievance officer and warden (*Id.* at p. 33).

Based on these records, the August 20th grievance was, in fact, fully exhausted. It seems to the Court that the August 26th grievance should also be considered fully exhausted. Prison officials chose not to issue a separate response to the August 26th grievance, and instead issued one response that addressed all of the incidents and issues contained in both the August 20th and August 26th grievances. Plaintiff appealed that response to the ARB, where it was addressed on the merits. The fact that the ARB issued a formal response rejecting the August 26th grievance cannot be taken to mean Plaintiff did not fully exhaust it because the records demonstrate that Plaintiff's complaints contained in the August 26th grievance were considered at every level of the administrative process.

Consequently, the Court erred when it concluded in the second Report and Recommendation that there was no evidence that Plaintiff had fully exhausted the

grievances dated August 20 and 26, 2018, and adopting the Report and Recommendation and granting Dr. Santos's motion for summary judgment would belie the full factual record in this case. That leaves the Court in the rather odd position of declining to adopt its own Report and Recommendation. The Court must now consider whether these grievances were sufficient to exhaust as to the allegations contained in Count 2.

Dr. Santos once again argues that Plaintiff's claim against Dr. Santos in Count 2 is not new; it has always been the same and Plaintiff's amended complaint simply added factual allegations in support of his existing claim against Dr. Santos (Doc. 55, p. 3; *see also* Doc. 44). Therefore, Plaintiff had to exhaust his administrative remedies as to this claim *before* he filed this case in May 2018, and these grievances, which post-date the original complaint, cannot serve to exhaust as to Count 2 (*Id.*).

The general rule is that a prisoner must exhaust administrative remedies before filing suit, as opposed to filing suit and then exhausting while the litigation is pending. *E.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). An exception to this rule exists, however. This exception provides that claims that arose after the original complaint was filed can be added by amending the complaint so long as they were fully exhausted by the time the plaintiff seeks to amend. *Cannon v. Washington*, 418 F.3d 714, 719–20 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005).

Here, Plaintiff originally alleged that he arrived at Centralia in November 2017 and met with Dr. Santos, at which time he told the doctor about his history of shoulder issues and said that his pain medication was not working, but Dr. Santos said there was no need for further treatment (Doc. 1; Doc. 7). The allegation that Dr. Santos was

deliberately indifferent to Plaintiff's shoulder issues upon Plaintiff's arrival at Centralia was designated as Count 1 (Doc. 7). In the amended complaint, Plaintiff alleged that Dr. Santos acted with deliberate indifference on various occasions between February and September 2018 (Doc. 40). In particular, Plaintiff alleges that on February 27, 2018, Dr. Santos discontinued Plaintiff's pain medication Ultram (Doc. 40, p. 6.). On June 29, 2018, Dr. Santos "refused to extend [the] pain medication" that Plaintiff had been "prescribed for over six months" (*Id.*). On July 6, 2018, Dr. Santos refused Plaintiff's request to renew "his only pain medication he had left" (*Id.*). Later that month, Dr. Santos renewed Plaintiff's prescription for Neurontin, but there was a twelve-day gap before Plaintiff started receiving it (*Id.*). On July 30, 2018, Dr. Santos declined Plaintiff's request to be referred to a specialist for his shoulder (*Id.* at p. 7). On August 14, 2018, Dr. Santos refused to follow the recommendations made by an emergency room physician following Plaintiff's treatment for a dislocated shoulder (*Id.*). On August 21, 2018, at a follow-up appointment after Plaintiff's shoulder dislocation, Plaintiff asked [Dr. Santos] about his pain meds and a renewal [but] Defendant Santos refused" (*Id.*). These subsequent instances of deliberate indifference were collectively designated as Count 2 (Doc. 39).

Dr. Santos does not explain why he thinks Plaintiff's claim in the amended complaint is not a new claim (Doc. 55; Doc. 44). As best the Court can tell, Dr. Santos thinks Plaintiff is alleging that ever since he first met with Dr. Santos in November 2017, he has not received proper medical treatment for his shoulder. In other words, there has

been one continuous, unabated instance of deliberate indifference to his shoulder pain.[2] But it is not clear from the amended complaint that's what Plaintiff is actually alleging. Instead, the allegations in the amended complaint seem to suggest there were times when Dr. Santos responded to Plaintiff's complaints and provided him with medical care for his shoulder, but there have also been multiple, discrete instances where Dr. Santos refused or failed to provide Plaintiff with proper care for one reason or another. In other words, obtaining adequate medical care has repeatedly been a problem for Plaintiff, but not a continuous one; there have been breaks during which Plaintiff received care. The Court believes it makes the most sense to view the allegations in the amended complaint as alleging separate instances of deliberate indifference rather than one continuous act of deliberate indifference—meaning separate but related claims, and not one, single claim.

If these new claims arose after the original complaint was filed, then Plaintiff had to exhaust them prior to seeking leave to amend his complaint to add them. The only claim that arose after Plaintiff filed this lawsuit in May 2018 was the instance where

---

[2] "A violation is called 'continuing,' when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). It is "a series of failures to treat a medical condition as a single wrong that ends . . . when treatment is provided or the inmate is released." *Reed v. Larson*, No. 18-CV-1182-JPG, 2019 WL 6769319, at *2 (S.D. Ill. Dec. 12, 2019) (citing *Jervis v. Mitcheff*, 258 Fed. Appx. 3, 5-6 (7th Cir. 2007)). *See also Heard v. Tilden*, 809 F.3d 974, 979 (7th Cir. 2016) ("Every day that the defendants improperly refused to treat Heard's condition potentially constituted a new act of deliberate indifference.") For example, in *Heard*, the prisoner developed a prominent bulge in his groin that he suspected was a hernia. *Id.* at 317. It caused him significant pain and caused numbness in the upper part of his thigh. *Id.* After months of unsuccessfully demanding medical attention, he was finally examined by a doctor who diagnosed a ruptured hernia and recommended surgery, but the jail refused to act on the recommendation. *Id.* "It would have been impractical to allocate the plaintiff's pain day by day across the period during which medical treatment was delayed by the deliberate indifference of the defendants to his plight." *Id.* at 320.

Plaintiff alleges Dr. Santos discontinued his prescription for Ultram in February 2018 (Doc. 40, p. 6.). Because this incident occurred by the time Plaintiff initiated this lawsuit, he had to exhaust his remedies as to this claim before filing suit. The Court has already determined that Plaintiff did not fully exhaust any grievances as to Dr. Santos prior to filing suit (Doc. 38). Therefore, this claim is unexhausted and must be dismissed.

The rest of the claims alleged in the amended complaint arose after Plaintiff filed this lawsuit. It was obviously impossible for him to exhaust these claims before filing suit because they had not yet occurred. *Barnes*, 420 F.3d at 678. Rather, he was required to exhaust these claims before he sought leave to file his amended complaint in November 2018 (Doc. 23). The question for the Court is whether the grievances dated August 20 and 26, 2018 were sufficient to exhaust as to Count 2.

The August 20th grievance plainly challenges Dr. Santos's conduct in discharging Plaintiff from the health care unit on August 14th. The August 26th grievance plainly challenges Dr. Santos's conduct at a follow-up appointment on August 21st. Plaintiff also mentions inadequate pain medication in the grievances, however, it is not entirely clear if he is complaining that Dr. Santos refused to increase his pain medication on August 14th and/or August 21st, or if he is complaining about an ongoing refusal. If the grievances are read liberally enough, the latter could be true. The prison's response to the grievances, however, confirms that administrators read them as specifically challenging Dr. Santos's conduct on August 14th and 21st but not anything prior to those dates and not any kind of ongoing, persistent failure on Dr. Santos's part to address Plaintiff's condition. Consequently, these grievances are sufficient to exhaust *only* the claim

contained in Count 2 that alleges Dr. Santos acted with deliberate indifference on August 14, 2018 when he refused to follow the recommendations made by the emergency room physician and on August 21,2018, when he refused Plaintiff's request to renew his pain medication. They are not sufficient to put prison officials on notice of the other instances of deliberate indifference contained in Count 2 that occurred in June and July 2018,. Therefore, those claims are dismissed without prejudice for failure to exhaust.

## Conclusion

Plaintiff's motion for leave to amend the complaint (Doc. 59) is **DENIED**. The undersigned **declines to adopt** the Report and Recommendation dated September 27, 2019 (Doc. 48). Defendant Venerio Santos's motion for summary judgment on the issue of exhaustion (Doc. 43) is **GRANTED in part and DENIED in part**.

This matter will proceed only on Plaintiff's claims contained in Count 2 that Dr. Santos acted with deliberate indifference on August 14, 2018 when he refused to follow the recommendations made by the emergency room physician and on August 21,2018, when he refused Plaintiff's request to renew his pain medication. All other claims contained in Count 2 are dismissed without prejudice for failure to exhaust and Count 1 also remains dismissed without prejudice for failure to exhaust.

A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: May 31, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**